THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD A. FELTON, Defendant-Appellant.

Second District   No. 81—216

Opinion filed September 3, 1982.—Rehearing denied September 30, 1982.

LINDBERG, J., specially concurring.

Mary Robinson and John J. Barrett, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Nancie Hudell, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Donald A. Felton, was tried by jury and convicted of six counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) and one count each of burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a)), theft in excess of $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)), unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3(a)), aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)) and aggravated assault (Ill. Rev. Stat. 1979, ch. 38, par. 12—2(a)(1)). He was thereafter sentenced to concurrent terms of imprisonment of 18 years for armed violence, 7 years for burglary, 5 years for theft, 3 years for unlawful restraint and 364 days for aggravated assault. The aggravated battery conviction was vacated as a lesser included offense of armed violence in which it was the predicate offense.

Defendant appeals contending that the trial court erred in denying his motion to suppress inculpatory statements he made to police when they questioned him after he had requested counsel, and, that his conviction and sentence for armed violence, based on aggravated

battery, must be vacated as prohibited double enhancement.

The evidence in trial disclosed that at about 4:15 p.m. on October 24, 1980, Earl F. Wilcek returned home from work to his apartment in Elmhurst and found damp, unfamiliar clothing on the radiator. He testified he was then confronted by defendant who was wearing Wilcek's clothes, his wife's gold necklace and pointing Wilcek's loaded rifle at him. Defendant told Wilcek to be cool and advised him he had recently escaped from Menard and had entered the apartment to find car keys as people were trying to kill him. Wilcek responded that his wife had their car and defendant held him at gunpoint for about an hour during which time defendant stated he had entered the apartment at about 2:30 p.m. by breaking a window; he also took money from Wilcek's wallet during this period. Defendant allowed Wilcek to answer the phone when his wife called to tell her to leave the car in back of the apartment and come upstairs. Wilcek pleaded with defendant not to shoot them when his wife arrived. Defendant said he knew gang members and killing was an everyday way of life in prison. He asked Wilcek if he had heard of Don Felton and became angry when he responded he had not; defendant told Wilcek he was desperate and that police would have to kill him to catch him. When defendant momentarily took his hand off the trigger of the rifle Wilcek made a grab for the weapon and a struggle ensued during which defendant threatened to cut Wilcek with his knife, struck him seven or eight times with the rifle and fired it once into the ceiling. Wilcek managed to escape out the door and called the police.

Sergeant John Millner and Officer Michael Krenek of the Elmhurst police were on patrol at approximately 5 p.m. when they were informed by radio that a subject matching the home invader's description had been seen. They drove to a location a few blocks from the Wilcek apartment where they observed defendant, whose description matched that given by Wilcek, carrying a rifle wrapped in clothing; he was also wearing Wilcek's clothes and his wife's gold necklace and carrying a knife. Defendant was arrested, given the *Miranda* warnings and transported to the police station where he requested an attorney at 5:25 p.m. At 6:30 p.m., before an attorney was provided, detectives Edwin Wolter and James O'Brien initiated an interview with defendant in which he made inculpatory statements. Defendant's pretrial motion to suppress the statements was denied by the trial court.

Officer Wolter testified in trial that defendant had said he had been released from Menard Penitentiary a few days earlier on October 24. Defendant also related that five men were always following

him and chasing him around and he had entered the apartment by breaking a window. In the apartment defendant looked for something to eat and dry clothes as his were wet. He also found a rifle in the apartment. Defendant stated a man came home and they struggled, during which defendant fired the rifle into the ceiling to scare the man and stop the struggle. The man then ran out and so did defendant.

Officer Raymond Turano testified he made a crime scene investigation in which he discovered a window pane on the back door had been broken. In the living room he found a spent shell casing on the floor, a pile of clothing on the radiator, and the room in disarray appearing as though a struggle had occurred. The officer also located a bullet hole in the upper portion of a closet.

Defendant testified on his own behalf that he was in the Wilcek apartment on the day in question. He stated he believed certain people were conspiring to kill him and he had followed his instincts in going there. He further testified he had entered another apartment under similar circumstances in the past for which he had been convicted of attempt burglary and sentenced to Menard.

Defendant initially contends that the trial court erred in denying his motion to suppress the inculpatory statements made by him while in custody, after requesting an attorney, in violation of *Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1884-85, which states:

> "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel had been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police."

The State confesses error, but argues that in this case it was harmless beyond a reasonable doubt and does not require reversal and a new trial.

In *People v. Black* (1972), 52 Ill. 2d 544, 555, 288 N.E.2d 376, 383, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155, the court stated that consideration of whether constitutional error is harmless beyond a reasonable doubt is not limited as to whether the erroneously admitted evidence is merely cumulative or that other

record evidence is sufficient to sustain the conviction; rather, the focus should be on the character and quality of the illegally obtained evidence as it relates to the other evidence bearing upon the same issue and its possible impact upon the jury. This question was further addressed in *People v. Henenberg* (1973), 55 Ill. 2d 5, 11, 302 N.E.2d 27, 30, in which the court found that a motion to suppress a confession would be allowed when continued interrogation by officers leads to a confession after defendant has requested an attorney and none has been provided. While there the court found the error required reversal after review of the evidence, it left open the question of whether the improper admission of a confession or inculpatory statement of a defendant can ever be harmless error.

In *People v. Washington* (1977), 68 Ill. 2d 186, 194, 369 N.E.2d 57, 60-61, *cert. denied* (1981), 454 U.S. 846, 70 L. Ed. 2d 132, 102 S. Ct. 162, the court determined that admission of incriminating statements made by Washington during custodial questioning after he had requested counsel could not be deemed harmless as there the eyewitnesses to the offenses were unable to identify defendant in a lineup and certain testimony in trial tended to corroborate his version of events.

■ In the case at bar, we find the erroneous admission into evidence of defendant's statement was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 828.) It neither contradicted nor did it in any manner tend to negate defendant's apparent defense of compulsion (Ill. Rev. Stat. 1979, ch. 38, par. 7—11(a)). It was supportive of his own testimony in trial and substantiated his assertion that entry of and the occurrences in the Wilcek apartment were carried out by him under a justified compulsion. Although erroneously allowed in evidence, the initial statements made by defendant could only aid his effort to convince the jury his defense was viable.

While not alone dispositive of the question of harmless error, in these circumstances the erroneous admission of this evidence could not have contributed to the finding of guilt by the jury. (See *People v. Smith* (1967), 38 Ill. 2d 13, 15, 230 N.E.2d 188, 190; *People v. Colley* (1980), 83 Ill. App. 3d 834, 842, 404 N.E.2d 378, 384, *appeal denied* (1980), 81 Ill. 2d 595; *People v. Gan* (1979), 75 Ill. App. 3d 72, 77, 394 N.E.2d 611, 614; *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 276, 383 N.E.2d 713, 722, *appeal denied* (1979), 74 Ill. 2d 588; *People v. Hansen* (1980), 90 Ill. App. 3d 407, 408, 413 N.E.2d 103, 105; *cf. People v. Lane* (1982), 106 Ill. App. 3d 793, 436 N.E.2d 704.) Other evidence clearly established the offenses for which defendant was con-

victed, including his identity as the offender. Although he argues denial of suppression of his statement necessitated a change in his trial tactics to lessen the impact of its introduction by the State, he does not suggest what other defense he might have to offer. We conclude admission of defendant's statement was harmless error.

Defendant also contends his conviction and sentence for armed violence, predicated upon aggravated battery, must be vacated in light of *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.

Verdicts were returned by the jury finding defendant guilty of armed violence under six counts of the information charging that offense. He was sentenced only under count XI, which charged as the predicate felony the commission of aggravated battery while armed with a rifle. The aggravated battery offense was itself enhanced from the misdemeanor of battery premised upon the allegation defendant committed a battery while armed contrary to section 12—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)).

The State argues, however, that because defendant was charged with offenses of armed violence predicated on aggravated battery while armed with a rifle and also while armed with a knife, that one weapon may serve as a basis for the offense of aggravated battery and the second as the predicate for armed violence, thus avoiding the *Haron* rule. We do not agree.

■ Section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) provides that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law." In *Haron* the court determined that the statute contemplates commission of a predicate offense which constitutes a felony without enhancement by the presence of a weapon. That test is not met here where defendant was sentenced for armed violence predicated upon aggravated battery by use of a deadly weapon. See *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987.

The State alternatively requests that we reinstate defendant's conviction for aggravated battery, which was vacated as a lesser included offense of armed violence, and remand for sentencing on that charge and the armed violence convictions predicated on the felonies of burglary and theft for which he was not sentenced and from which he did not appeal.

In the recent case of *People v. Dixon* (1982), 91 Ill. 2d 346, it was determined that the appellate court has authority to remand for sentencing unappealed and unsentenced convictions which were related to and dependent upon an appealed conviction. In the present case,

however, the trial court vacated the aggravated battery conviction for which no sentence was imposed and there remains no incomplete judgment in the trial court upon which sentence may be entered. (See *People v. Baker* (1980), 85 Ill. App. 3d 661, 663, 406 N.E.2d 1152, 1154.) Had the trial court chosen to permit that conviction to stand, remandment for sentencing would clearly be authorized. *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.

■ Arguably, when considered in the light of *People v. Dixon,* Supreme Court Rule 615(b)(2) (73 Ill. 2d R. 615(b)(2)) would permit a reviewing court to set aside the order vacating defendant's conviction for aggravated battery. It was vacated by the trial court as a lesser included offense of the armed violence conviction which defendant has appealed and was related to and dependent upon it. In *Dixon,* however, and related cases where remandment for sentencing has been authorized, there remained in the trial court an incomplete, nonfinal judgment of conviction upon which to act. (See *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540; *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) That is not the case here, and we believe it would be an unauthorized extension by this court of our powers of review under Rule 615(b)(2) to so hold.

The unsentenced convictions for armed violence present a different but equally troublesome question. Three general verdicts were returned by the jury finding defendant guilty of armed violence predicated, respectively, on aggravated battery (which we have discussed), burglary and felony theft. Count VII of the information charged armed violence predicated upon the commission of burglary while armed with a rifle; count VIII was predicated upon burglary while armed with a knife; count IX was predicated upon felony theft while armed with a rifle and count X was predicated upon felony theft while armed with a knife. Defendant was sentenced for armed violence only under count XI, which we have set aside. It is also apparent that as the rifle was obtained in the apartment after its entry by defendant, the general verdict for armed violence (burglary) could not refer to count VII, which was premised upon defendant being armed with that weapon when he entered the apartment.

The State suggests that the incomplete judgments of conviction for armed violence under counts VIII, IX and X be remanded for sentencing as the trial court was under the mistaken belief it could sentence defendant for only one of the armed violence convictions and did so under count XI, which defendant appealed. Again, we cannot agree.

■ Judgments were also entered and defendant was sentenced by

the trial court for the predicate offenses of burglary (Class 2) and felony theft (Class 3) as charged in counts I and II of the information. In these circumstances judgment should have been entered and sentence imposed only for the more serious Class X offenses of armed violence charged in counts VIII, IX and X in which the predicate burglary and thefts were alleged to have been committed while armed with category one weapons. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) The trial court did not choose to do so, however, and imposed sentence for the lesser included offenses of burglary and theft. Convictions and sentences for both armed violence and their predicate burglary and theft clearly cannot be imposed (*People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and we are not aware of any authority permitting this court to vacate the lesser offenses in order to remand for sentencing on the greater.

Accordingly, we reverse the judgment of the trial court for armed violence under count XI and in all other respects its judgment is affirmed.

Reversed in part; affirmed in part.

UNVERZAGT, J., concurs.

JUSTICE LINDBERG, specially concurring:
I specially concur in the majority opinion but would decline to remand for sentencing on the unsentenced armed violence convictions predicated on burglary and felony theft for a different reason. At the sentencing hearing the State waived sentencing on those armed violence convictions. See *People v. Ficarrotta* (1943), 385 Ill. 108.