THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD SMITH, a/k/a Donald Wells, Defendant-Appellant.

First District (1st Division)   No. 80—1171

Opinion filed December 20, 1982.

Steven Clark, of State Appellate Defender's Office, and William R. Hogan, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Stephen R. Botti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Donald Smith, was charged with attempted murder, armed violence, armed robbery, aggravated battery, and unlawful restraint in connection with the robbery of a food store. After a jury trial defendant was found guilty on all counts and sentenced to consecutive sentences of 60 years for armed robbery, 30 years for at-

tempted murder and six years for unlawful restraint. Defendant appeals.

Three briefs were filed on behalf of defendant: a *pro se* brief, a brief by appointed counsel, and a brief by the State Appellate Defender. The issues raised in the briefs may be summarized as follows: (1) whether the trial court abused its discretion in denying defendant's request for appointed counsel other than the public defender when the court's refusal to appoint other counsel led to the defendant's decision to defend his case *pro se;* (2) whether the assignment of defendant's case to a special ex-offender court carried an unacceptable risk of prejudice; (3) whether the judgments on the offenses of aggravated battery and armed violence, on which no sentence was entered, may be upheld when they arose for the same acts on which the judgments for attempted murder and unlawful restraint rest; and (4) whether the trial court abused its discretion in sentencing a man 62 years of age to consecutive sentences totaling 96 years.

On December 3, 1979, defendant was arraigned and a public defender was appointed to defend him. On March 19, 1980, defendant's case was called. The assistant public defender informed the court that he and the State's Attorney were ready to proceed to trial. The public defender also informed the court that on the last court date and again today defendant had said that he wanted to retain private counsel and was not ready to proceed to trial. Defendant addressed the court. He requested the court to appoint counsel other than the public defender's office to represent him because he did not think the public defender was doing enough to defend his case. The court denied defendant's motion.

After the jury was selected, defendant again expressed his dissatisfaction with defense counsel. In chambers, the court asked defendant why he wanted private counsel appointed. Defendant replied, "They told me this morning that everything was cut and dried, so I don't need them, let me do it myself then." Defendant also said that the assistant public defender had told him that he would probably get a sentence of 60 years and that he (the assistant public defender) hopes defendant would get 100 years. Defendant told the court that he did not want to represent himself but since the court would not grant his motion to appoint other counsel, he would rather represent himself than have the public defenders try his case because he did not believe they would do their best to defend him. The assistant public defenders then outlined for the court what actions they had taken to prepare defendant's case. The assistant public defenders told the court that they had filed oral and written motions for discovery; that

they reviewed the police reports and the charges with defendant; and that they discussed with him whether any witnesses could be called on his behalf. Defense counsel stated that when they were explaining the case to defendant, defendant had not indicated that there was any substance of any defense that would contradict or tend to contradict the testimony that the State was going to produce at trial. Defense counsel told the court that they intended to hold the State to its burden of proof. The court found that the public defender was adequately representing defendant and that defendant's complaints were without merit.

After additional colloquy between the court and defendant, the court explained in detail to defendant the consequences of self-representation, the charges against defendant and the penalties to which he was subject. Defendant chose to represent himself rather than have the assistant public defenders present his defense. The court instructed the assistant public defenders to stay in the courtroom behind the barrier to advise defendant should he request any assistance.

At trial, James Smith, the manager of the Jewel Food Store at 2303 North Clark Street in Chicago, testified that at approximately 2:30 p.m. on November 17, 1979, defendant, armed with a gun, approached the service desk of the store and demanded money. He was given money from the store's safe. As defendant left the store, the manager and a stock boy, Gordon Michaelson, followed about four feet behind him. Smith testified that as defendant fled he turned and shot Michaelson in the abdomen.

Roy Burman testified that he was standing next to his car in the Jewel parking lot when defendant approached him. Defendant ordered Burman to drive him to the nearest bus stop and warned Burman that he had shot someone and would not hesitate to shoot Burman. Defendant crouched on the floor of the passenger side of the car facing Burman.

Officer Pecak of the Chicago Police Department testified that he arrived at the scene immediately after the robbery and was given a description of Burman's car. He caught up with Burman's vehicle at an intersection, but when he saw defendant on the floor of the car with a gun in his hand, he backed away and radioed for assistance. Within a few blocks Burman's car was surrounded by police vehicles and defendant was arrested. The stolen money was found in defendant's possession and defendant's weapon was found on the floor of Burman's car. The spent bullet recovered at the scene of the shooting was determined to have been fired from defendant's gun.

Defendant declined to make an opening statement or to cross-ex-

amine any witnesses for the People. Frank Wilson appeared on behalf of the defendant. Wilson testified that in his opinion defendant was an alcoholic. Defendant's second witness, Marilyn Eads, testified that she did not consider defendant an alcoholic. Eads testified that she had known defendant since 1960 and that they used to be close friends. Eads also testified that defendant was not addicted to any narcotics and that she had never seen defendant take any narcotics. Eads further testified that she did not see defendant on the date in question and did not drink with him on that date.

Defendant informed the court that he would like to call a psychiatrist on his behalf in order to testify that a person could commit a crime under the influence of narcotics and alcohol and yet have no memory of such an occurrence. The court explained to defendant that there must be some evidence of intoxication in the record before expert testimony would be allowed. The court ruled that there was no such evidence in the record and, therefore, no basis for the requested expert testimony.

After final argument by the State, the court instructed the jury. The jury returned verdicts of guilty on all counts, and the trial court entered judgments on the verdicts.

Defendant first contends that the trial court's refusal to appoint counsel other than the public defender was an abuse of discretion. Defendant argues that the court gave defendant a "Hobson's choice" in compelling him to choose between representing himself and in being represented by the public defenders. Defendant asserts that he was forced to go to trial without counsel. Defendant argues that his waiver of counsel was not knowing and intelligent and, therefore, cannot stand.

An indigent defendant is entitled to counsel other than the public defender only upon a showing of good cause. (*People v. Drew* (1976), 36 Ill. App. 3d 807, 345 N.E.2d 45.) Absent such a showing the trial court has discretion to deny defendant's request. (*Drew.*) A defendant's request for appointed counsel other than the public defender is seldom granted without a showing of potentially great harm to defendant's legitimate interest. (*People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058.) Moreover, an indigent defendant does not have the right to choose his court-appointed counsel. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14; see *People v. Gray* (1965), 33 Ill. 2d 349, 211 N.E.2d 369, *cert. denied* (1966), 384 U.S. 718, 16 L. Ed. 2d 881, 86 S. Ct. 1899.

■ ■ Defendant's statements to the trial court reveal that his dissatisfaction with the public defenders developed because defendant

was displeased with the public defender's opinion as to the likely outcome of defendant's case. The trial court reviewed the action taken by the public defenders to prepare defendant's case and found that defendant's complaint that they were not doing enough for him was groundless. Defendant did not show good cause entitling him to appointment of counsel other than the public defenders already assigned to his case. The trial court fully appraised defendant of his right to counsel, the consequences arising from self-representation, the nature of the charges against him and the penalties to which he may be subjected in compliance with Supreme Court Rule 401(a) (73 Ill. 2d R. 401(a)). The court then determined that defendant was capable of representing himself. See *People v. Baker* (1982), 92 Ill. 2d 85, 440 N.E.2d 856.

We have carefully reviewed the facts of this case and find that defendant's decision to represent himself was knowingly and intelligently made. The trial court did not abuse its discretion in refusing to appoint counsel other than the public defender and in allowing defendant to proceed to defend his case *pro se*.

■ Defendant also argues that he received an unfair trial because he was unable to cross-examine the witnesses against him. Defendant has the right to waive counsel and conduct his own defense. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.) "A defendant who knowingly and voluntarily waives his right to counsel cannot be heard to complain that his *pro se* representation prevented him from receiving effective representation of counsel or a fair trial." *People v. Smith* (1975), 33 Ill. App. 3d 725, 727-28, 338 N.E.2d 207, 208; *People v. Richardson* (1959), 17 Ill. 2d 253, 260, 161 N.E.2d 268, 272.

■ Defendant's second contention is that the assignment of his case to a special ex-offender court carried an unacceptable risk of prejudice. In *People v. Jones* (1980), 88 Ill. App. 3d 629, 410 N.E.2d 1122, *cert. denied* (1981), 452 U.S. 964, 69 L. Ed. 2d 976, 101 S. Ct. 3116, the court found a similar allegation of prejudice resulting from the assignment of a case to a special ex-offender court to be without merit. The court stated that "[s]o long as the expedience and efficiency sought to be achieved are not accomplished at the expense of undue prejudice to defendants," the establishment of special courts for recidivist cases is proper. (*People v. Jones* (1980), 88 Ill. App. 3d 629, 633, 410 N.E.2d 1122, 1125.) There is no evidence in the record that defendant suffered any prejudice as a result of the assignment of his case to a special ex-offender court.

Defendant next argues that this court should vacate the convic-

tions entered against him for armed violence and aggravated battery on which no sentence was imposed. The jury returned guilty verdicts on all counts: attempted murder, armed robbery, unlawful restraint, four counts of aggravated battery arising out of the shooting of Michaelson, and one count of armed violence predicated on the shooting of Michaelson and one count of armed violence predicated on the unlawful restraint of Burman.

The court entered judgment on the verdicts but only sentenced defendant on attempted murder, armed robbery, and unlawful restraint. No sentence was entered on the armed violence and aggravated battery counts. Defendant argues that based upon *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, this court should vacate the convictions on which no sentence was entered since the convictions for armed violence and aggravated battery arose from the same physical acts as the convictions for attempted murder and unlawful restraint on which a sentence was imposed. (*Lilly; People v. Pierce* (1977), 50 Ill. App. 3d 525, 365 N.E.2d 988, *cert. denied* (1978), 434 U.S. 1077, 55 L. Ed. 2d 784, 98 S. Ct. 1270.) A defendant suffers prejudice when more than one offense is carved from the same physical act. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

The State argues that a conviction without a sentence is a nonfinal judgment from which defendant cannot appeal. The supreme court, however, resolved this issue in *Lilly*. When a case is properly before the reviewing court on appeal from other convictions defendant received, the court has authority under Supreme Court Rule 366 (73 Ill. 2d R. 366) to vacate the incomplete judgment entered on the lesser included offense. *Lilly*.

The State concedes that if we reach the issue of the incomplete judgments, the convictions on four counts of aggravated battery and one count of armed violence predicated upon the shooting of Michaelson should be vacated because they did arise from the same physical act as the conviction for attempted murder. Additionally, the State argues that the trial court incorrectly sentenced defendant on the unlawful restraint conviction rather than on the conviction for armed violence predicated upon unlawful restraint. Unlawful restraint is a Class 4 felony (Ill. Rev. Stat. 1979, ch. 38, par. 10—3(b)), while armed violence committed with a Category 1 weapon is a Class X felony (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3(a)). The State urges this court to vacate the conviction and sentence entered on the unlawful restraint conviction and remand the conviction of armed violence

predicated upon unlawful restraint or sentencing.

Multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis of both charges. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; see *People v. Mormon* (1982), 92 Ill. 2d 268; *People v. Simmons* (1982), 93 Ill. 2d 94.) In such a situation, judgment should have been entered and sentence imposed only on the more serious offense. (*Donaldson.*) Under the facts of this case, defendant should have been sentenced on the conviction for armed violence based upon unlawful restraint. *Donaldson.*

The issue raised by the State was recently considered in *People v. Felton* (1982), 108 Ill. App. 3d 763, 439 N.E.2d 1107. There the court concluded that it was "not aware of any authority permitting this court to vacate the lesser offenses in order to remand for sentencing on the greater." (108 Ill. App. 3d 763, 770, 439 N.E.2d 1107, 1112.) We note that the State has not cited any authority for the position it urges, and we therefore vacate the convictions on four counts of aggravated battery and two counts of armed violence on which no sentence was entered. *People v. Lilly* (1974), 56 Ill. 2d 493.

■ The last issue raised by defendant is whether the trial court abused its discretion in sentencing a man 62 years of age to consecutive sentences totaling 96 years. The imposition of a sentence is a matter of judicial discretion and absent an abuse of that discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.) The record reveals that the trial court considered appropriate factors in sentencing defendant, including his rehabilitative potential, the circumstances surrounding the commission of the crime and defendant's long criminal record which indicates consistent criminal activity since 1935. The trial judge's decision in sentencing defendant to 96 years is entitled to great deference and weight. (*Perruquet.*) We cannot say that the sentence imposed by the trial court constituted an abuse of discretion.

Accordingly, the judgment entered by the circuit court of Cook County on four counts of aggravated battery and on two counts of armed violence is vacated and, in all other respects, its judgment and sentences are affirmed.

Affirmed in part, vacated in part.

GOLDBERG and O'CONNOR, JJ., concur.