THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE DACE, Defendant-Appellant.

Third District   No. 3—88—0575

Opinion filed June 16, 1989.

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, for appellant.

Edward Burmilla, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Defendant was indicted for two counts of murder for causing the death of Roseleen Kilcoyne. After trial by jury, defendant was convicted on both counts and subsequently sentenced to natural life imprisonment. Defendant took a timely appeal, and on March 23, 1987, this court reversed the convictions and remanded the cause for a new trial. (*People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E. 2d 332) (*Dace I*).) A second jury trial was then held, wherein defendant was again convicted of murder and felony murder. Once again, defendant was sentenced to natural life imprisonment on the felony murder conviction. Defendant now appeals his conviction and sentence after re-

trial for various reasons outlined hereinafter.

The underlying facts of this case are adequately stated in *Dace I* and will only be reiterated here as necessary in deciding the issues presented. Defendant first argues the trial court lacked jurisdiction to issue a search warrant for the seizure of impressions of defendant's teeth on April 8, 1987. The basis for defendant's objection is the State had pending a petition to the Illinois Supreme Court for leave to appeal this court's decision in *Dace I* at the time the search warrant was issued. Moreover, one of the central issues on appeal in *Dace I* was whether probable cause existed for the issuance of a prior search warrant to obtain similar dental impressions of the defendant. The State's petition for leave to appeal to the Illinois Supreme Court was subsequently denied on October 29, 1987, and the retrial then proceeded with the State using as evidence the dental impressions obtained via the search warrant issued April 8, 1987.

■ It is generally correct that when a timely notice of appeal is filed, the jurisdiction of the appellate court attaches *instanter* and the circuit court is divested of jurisdiction. *(Daley v. Laurie* (1985), 106 Ill. 2d 33, 476 N.E. 2d 419; *People v. Baker* (1980), 85 Ill. App. 3d 661, 406 N.E. 2d 1152.) Trial courts, however, do retain jurisdiction to perform ministerial functions *(People v. McBride* (1983), 114 Ill. App. 3d 75, 448 N.E. 2d 551) and to hear and determine matters independent of and collateral to the judgment being appealed. *(People v. Larry* (1986), 144 Ill. App. 3d 669, 494 N.E. 2d 1212; *People v. Verdone* (1985), 136 Ill. App. 3d 75, 482 N.E. 2d 1134.) Nonetheless, as to matters integrally related to the appeal, appellate court jurisdiction continues until the mandate of that court is filed in the circuit court. *McBride*, 114 Ill. App. 3d 75, 448 N.E. 2d 551; *Baker*, 85 Ill. App. 3d 661, 406 N.E. 2d 1152.

The obvious question herein is whether the trial court lacked jurisdiction to issue a second search warrant on April 8, 1987, when an issue of defendant's case on appeal in *Dace I* was the propriety of the prior search warrant. In other words, is the issuance of the second search warrant independent of and collateral to the issues of the case on appeal. We believe it is.

■ In *Dace I*, we determined the search warrant was improperly issued for lack of probable cause. Defendant does not claim on appeal in this case that the court lacked probable cause, merely that the court had no jurisdiction to issue the second warrant. Issuance of the second search warrant, however, in no way affected the appeal of *Dace I*. It was issued pursuant to an independent affidavit and testimony and was necessitated by our decision that the evidence seized pursuant to the

first warrant should have been suppressed. We note that the Illinois Supreme Court's mandate did not issue until October of 1987, roughly seven months after the second warrant was issued. To determine that the State must wait such a length of time to pursue its investigation and evidence gathering is not sound public policy, as time is often of the essence in certain investigatory situations. The trial court was not making any determination regarding the propriety of the first warrant and thus had jurisdiction to issue a new search warrant while *Dace I* was pending on appeal. The cases of *People v. Circella* (1972), 6 Ill. App. 3d 214, 285 N.E. 2d 254, *McBride* (114 Ill. App. 3d 75, 448 N.E. 2d 551), and *Verdone* (136 Ill. App. 3d 75, 482 N.E. 2d 1134), cited by defendant as support for his position, are factually dissimilar to the present case.

Defendant next argues that the trial court committed reversible error in precluding defendant from cross-examining an inmate-witness to an alleged admission by defendant about the conviction and sentence received by the witness' codefendant. The witness, Victor Moffett, was a fellow inmate of the defendant, while defendant was detained in the Will County jail, in March of 1985. Moffett claimed he heard defendant state he struggled with Kilcoyne, grabbed a gun from her and shot her, when she caught him committing a theft in the tavern where she worked. At the time of the retrial, Moffett faced pending charges of aggravated battery and unlawful use of weapons and was also on probation for 1985 charges of armed robbery and home invasion.

The defense revealed in cross-examination that in 1985, Moffett was in jail for armed robbery and home invasion with bond set at $30,000 and then suddenly released from custody on a recognizance bond after coming forward with defendant's admissions. Moreover, Moffett subsequently negotiated a reduction of his own charges with the State from nonprobationable Class X felonies to lesser offenses and was sentenced to four years' probation. It was further elicited that Moffett's probation had not been revoked even though he had been subsequently charged with aggravated battery and unlawful use of weapons. The trial court, however, limited defendant's cross-examination of Moffett regarding what had happened to his codefendant on the 1985 charges of armed robbery and home invasion for the reason that it "stretches the relevance considerably."

Defendant correctly indicates that wide latitude should be given when cross-examining a witness on the subject of bias, interest or a motive to testify falsely. (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E. 2d 9.) It is entirely relevant for the cross-examiner to delve into evidence that the witness is currently under arrest, indictment

(*Triplett*, 108 Ill. 2d 463, 485 N.E. 2d 9) or incarcerated (*Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218). It is also immaterial whether the arrest(s) used for impeachment involves the same occurrence for which the defendant is on trial. (*Triplett*, 108 Ill. 2d 463, 485 N.E. 2d 9.) Nonetheless, as a general rule, the latitude allowed in cross-examination rests largely in the discretion of the trial court and it is "only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere." (*People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.) Irrelevant evidence which tends to mislead the jury should be excluded. *People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E. 2d 228.

■ Defendant's goal in cross-examination was to show that Moffett was given leniency for his testimony. The record indicates that defendant's cross-examination pertaining to leniency was thorough and effective. Defendant argues, however, the point would not completely hit home to the jurors unless Moffett was questioned about the more extreme sentence received by his codefendant in the armed robbery and home invasion arrests. Considering the questionable relevance of the testimony, along with the other evidence introduced regarding leniency, we believe the trial court did not abuse its discretion in excluding the evidence. Permitting testimony of Moffett's codefendant's sentence would have necessitated, in essence, a reexamination by the jury of the codefendant's sentencing hearing, taking into account all of the factors considered by the court in determining an appropriate sentence. Although more extensive cross-examination is permitted in situations where a defendant is trying to show the bias of or a motive for a witness to testify falsely, such examination must still be within the bounds of reasonableness. (*Triplett*, 108 Ill. 2d 463, 485 N.E. 2d 9.) The evidence taken could have been reasonably interpreted by the jury as indicating Moffett received leniency for his testimony and therefore had a motive to testify falsely. The subject evidence, if allowed, would have unduly sidetracked the jury.

■ Defendant next contends that he was denied a fair trial because of certain remarks made by the prosecution in rebuttal argument at closing. We note initially that defendant has waived the issue of whether the prosecution committed error in closing for all allegations of error except one because no timely trial objection was made nor was a written post-trial motion filed. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E. 2d 1124.

The one instance of alleged error preserved for review involves the following statement by the assistant State's Attorney:

"One thing, as Ms. Badger says, the burden of proof, beyond a reasonable doubt. And it's not as she would like to indicate, or have you believe. It's not beyond all figment of everyone's imagination. That is not the burden. Beyond a reasonable doubt."

The State claims that defendant's counsel invited the above comment by attempting to discredit the testimony of the State's witnesses. We do not necessarily agree, but, regardless, do not believe the above-quoted remark rises to the level of reversible error. The cases considering remarks regarding the standard of proof uphold reversal where the remark tends to lessen the State's burden of proof. (See *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E. 2d 301; *People v. Ellis* (1985), 134 Ill. App. 3d 924, 481 N.E. 2d 320; *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E. 2d 103; *People v. Robinson* (1984), 125 Ill. App. 3d 1077, 467 N.E. 2d 291; *People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E. 2d 206.) The assistant State's Attorney's remark was simply a nonsensical statement that in no way tended to lessen the State's burden of proof.

■ Defendant next charges that the trial court erroneously sentenced defendant to a term of natural life imprisonment on two grounds. First, that the statutory scheme for sentencing a defendant eligible for the death penalty is unconstitutional, and second, the sentence of natural life imprisonment imposed upon defendant was unfair and excessive. As to the constitutional argument, defendant acknowledges that the issue was not raised at the trial court, although mentioning the issue was raised in *Dace I*. Nonetheless, defendant maintains that this court should review the matter as plain error under Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)). Defendant maintains the sentencing scheme is unconstitutional, because it allows for a defendant to be sentenced to natural life imprisonment without being eligible for an extended-term sentence of what was then 40-80 years. In essence, no middle ground is available for a judge in certain felony murder scenarios such as the present case. We decline to review the sentencing scheme for two reasons. First, the defendant did not raise the issue at the trial level, and second, because the very issue defendant wants reviewed has already been recently decided contrary to defendant's position in *People v. Bowen* (1985), 133 Ill. App. 3d 994, 479 N.E. 2d 997, and we adhere to the *Bowen* court's rationale and decision. Furthermore, in light of *Bowen* we decline defendant's invitation to review the sentencing scheme as plain error.

■ We further decline to hold the imposition of natural life imprisonment was unfair and excessive under the circumstances of this case. Defendant claims this sort of felony murder is not the type of crime for

which natural life imprisonment was intended because defendant did not enter the bar with the intent to rob and kill the victim. The defendant, however, was convicted, by a jury, of felony murder, meaning that he was proven to have intended to do the acts he did. The trial court is in the best position to determine a proper sentence (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E. 2d 203), and its decision will not be disturbed, absent a clear abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E. 2d 541.

The trial court in this case had sufficient basis to impose natural life imprisonment. First, the statute allows for such sentence (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1 (a)(1)(b)), and second, defendant showed signs of lacking rehabilitative capacity in that he has a prior criminal record and was convicted of two offenses subsequent to the present offense. The trial court acted within the bounds of its discretion.

■ The last point of controversy regards defendant's assertion that if his subsequent conviction for criminal sexual assault is reversed on appeal, his case should be remanded for a new sentencing hearing. Defendant's sexual abuse case was in fact reversed on appeal by decision dated May 2, 1989. (*People v. Dace* (1989), 182 Ill. App. 3d 444.) The primary reason, however, for imposition of natural life imprisonment in this case was the murder was committed in the course of a forcible felony. Although subsequent convictions have some significance regarding potential for rehabilitation, we note that even though the sexual assault conviction was reversed, defendant was still subsequently convicted of escaping from the Will County jail. We simply fail to see how the reversal of the sexual assault conviction would significantly change the trial court's sentencing determination and refuse to remand the cause for sentencing on this ground.

■ Finally, both sides agree and we concur that the trial court erroneously included in the amended mittimus to the Department of Corrections that defendant was sentenced to a natural life term for both murder and felony murder. The trial court's sentence was based solely on the felony murder charge; therefore, we remand the cause for the trial court to amend the mittimus to indicate that defendant was sentenced to natural life for only the felony murder charge.

This cause is remanded for the limited purpose of amending the mittimus consistent with this opinion and is otherwise affirmed.

Remanded in part and affirmed in part.

HEIPLE and STOUDER, JJ., concur.